STRYKER, TAMS & DILL LLP
By: Harold Friedman
Two Penn Plaza East
Newark, NJ 07105
(973) 491-9500
*Attorneys for Defendant*
*Comcast Cable Communications, LLC*

MORGAN, LEWIS & BOCKIUS LLP
(A Pennsylvania Limited Liability Partnership)
By: Robert A. White and Christopher Iannicelli
502 Carnegie Center
Princeton, NJ 08540
(609) 919-6600
*Attorneys For Defendant*
*Cisco Systems, Inc.*

FOLEY & LARDNER LLP
(A Wisconsin Limited Liability Partnership)
By: Barry Felder and Anne Sekel
90 Park Avenue
New York, NY 10016
(212) 682-7474
*Attorneys for Defendant*
*True Ultimate Standards*
*Everywhere, Inc.*

MONTGOMERY, McCRACKEN,
WALKER & RHOADS, LLP
(A Limited Liability Partnership Formed in Pennsylvania)
By: Charles B. Casper and
Fabiana Pierre-Louis
LibertyView, Suite 600
457 Haddonfield Road
Cherry Hill, NJ 08002
(856) 488-7700
*Attorneys for Defendant*
*Microsoft Corporation*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| RUSS SMITH, *pro se*,<br><br>Plaintiff,<br><br>v.<br><br>TRUSTED UNIVERSAL STANDARDS IN ELECTRONIC TRANSACTIONS, INC. (d/b/a TRUSTe, Inc.); MICROSOFT, INC.; CISCO SYSTEMS, INC.; and COMCAST CABLE COMMUNICATIONS, LLC<br><br>Defendants. | Civil Action No. 1:09-cv-4567(RBK)(KMW)<br><br>**DEFENDANTS' JOINT MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO AMEND THE COMPLAINT**<br><br>Document Electronically Filed<br><br>**Returnable: To be determined** |

## TABLE OF CONTENTS

**Page**

I.    PLAINTIFF'S MOTION TO AMEND THE COMPLAINT SHOULD BE
      DENIED BECAUSE THE PROPOSED AMENDMENT WOULD BE FUTILE ........... 3

II.   THE PROPOSED AMENDED COMPLAINT'S NEWLY ADDED
      ALLEGATIONS FAIL TO STATE CLAIMS UPON WHICH RELIEF CAN BE
      GRANTED ...................................................................................................................... 4

      A.   Plaintiff's Allegations That the Privacy Policies of Microsoft, Cisco, and
           TRUSTe Constitute Contracts with Plaintiff Fail as a Matter of Law ................... 4

      B.   Plaintiff's Proposed Claims and Allegations Against Microsoft Are Futile
           and Should Be Dismissed ..................................................................................... 5

      C.   Plaintiff's Proposed Allegations Against TRUSTe are Futile and Should
           Be Dismissed ....................................................................................................... 8

      D.   Plaintiff's Proposed Allegations Against Comcast are Futile Should Be
           Dismissed ........................................................................................................... 10

III.  PLAINTIFF'S PROPOSED DAMAGES ALLEGATIONS ARE ALSO FUTILE ........ 13

## TABLE OF AUTHORITIES

Page

### FEDERAL CASES

*Bell Atlantic Corp. v. Twombley*, 559 U.S. 544 (2007) .................................................. 11

*Directv v. Marino*, 2005 WL 1367232 (D.N.J. June 8, 2005) ......................................... 9

*Dyer v. Northwest Airlines Corps.*, 334 F. Supp. 2d 1196 (D.N.D. 2004) ...................... 5

*In re Northwest Airlines Privacy Litigation*, 2004 WL 1278459 (D. Minn. June 6, 2004)............ 5

*Massarsky v. General Motors Corp.*, 706 F.2d 111 (3d Cir. 1983)................................. 3

*Morse v. Lower Merion School Dist.*, 132 F.3d 902 (3d Cir. 1997) ........................... 5, 6

*Perry v. Gold & Laine, P.C.*, 371 F. Supp. 2d 622 (D.N.J. 2005)................................ 5

*Philips v. Borough of Keyport*, 179 F.R.D. 140 (D.N.J. 1998).............................. 3, 8, 9

*Weiss v. First Unum Life Ins.*, 2003 WL 25713970 (D.N.J. 2003)................................ 13

*Witherspoon v. Rent-A-Car, Inc.*, 173 F. Supp. 2d 239 (D.N.J. 2001) ........................... 3

### STATE CASES

*Borough of W. Caldwell v. Borough of Caldwell*, 26 N.J. 9 (1958) ............................. 4

*Dabush v. Mercedes-Benz USA, LLC*, 378 N.J. Super. 105 (App. Div. 2005).............................. 7

*Seaview Orthopaedics ex. rel. Fleming v. Nat'l Healthcare Res., Inc.*,
366 N.J. Super. 501 (App. Div. 2004) ............................................................ 4

*Weinberg v. Sprint Corp.*, 173 N.J. 233 (2002) ................................................ 9

### FEDERAL STATUTES

47 U.S.C. § 551.......................................................................... 3, 10, 11

18 U.S.C. § 2510.............................................................................. 6

18 U.S.C. § 3121.............................................................................. 6

### FEDERAL RULES

Fed. R. Civ. P. 12(b)(6)................................................................. 1, 2, 13

## TABLE OF AUTHORITIES
(continued)

**Page**

**FEDERAL REGULATIONS**

47 C.F.R. § 76.1716 ............................................................................................................. 3, 10, 11

Defendants Comcast Cable Communications, LLC ("Comcast"), Cisco Systems, Inc. ("Cisco"), Microsoft Corporation ("Microsoft"), and True Ultimate Standards Everywhere, Inc. ("TRUSTe") submit this joint Memorandum of Law in Opposition to Plaintiff Russ Smith's Motion for Leave to Amend the Complaint.[1]

## SUMMARY OF THE ARGUMENT

Plaintiff's proposed Amended Complaint attempts to cure the deficiencies of the Complaint by claiming to provide a "detailed description" of all contracts and consumer transactions between himself and Defendants and to specify compensatory, punitive, and statutory damages as a result of Defendants' alleged actions. Plaintiff's proposed Amended Complaint fails to remedy the deficiencies. It still does not allege a single plausible claim against any Defendant. Therefore, allowing Plaintiff to amend would be futile. Permitting Plaintiff to amend to pursue the proposed Amended Complaint's newly asserted damages claims would be equally futile because it contains no more than vague and conclusory statements of his alleged damages without alleging compensable injury as a result of the actions of any Defendant. For these reasons, even if Plaintiff is allowed to amend the Complaint, the case should still be dismissed because the proposed Amended Complaint fails to assert any plausible claims against Defendants.

## RELEVANT BACKGROUND

On or about July 29, 2009, Plaintiff filed the Complaint in this action, *pro se*, in the Superior Court of New Jersey, Cape May County, Chancery Division. Defendants removed the case to this Court on September 4, 2009. On September 29, 2009, Defendants Comcast, Cisco,

---

[1]Attached to this Memorandum of Law are the unpublished opinions cited herein.

and Microsoft moved to dismiss the Complaint under Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted and filed a Joint Memorandum of Law in support ("Joint Memorandum" or "Joint Mem.") (Doc. No. 22). Defendant TRUSTe joined and filed a separate Motion to Dismiss and Memorandum of Law ("TRUSTe Mot.") (Doc. No. 21), also on September 29, 2009, moving to dismiss Plaintiff's Complaint for lack of Article III standing and for failure to state a claim against it upon which relief can be granted. Defendants Comcast, Cisco, and Microsoft joined in TRUSTe's argument that Plaintiff lacks standing under Article III to bring any claim alleged.

On October 9, 2009, Plaintiff filed a brief in opposition to Defendants' motions to dismiss ("Plaintiff Opp. Brief") (Doc. No. 30). In his opposition, Plaintiff states that he opposes Defendants' motions and directs this Court to his Motion for Leave to Amend the Complaint (Doc. No. 31). Plaintiff Opp. Brief ¶¶ 1-2. Plaintiff's opposition argues that the proposed Amended Complaint ("Prop. Am. Compl.") would correct the deficiencies of the Complaint. *Id.* at ¶ 3a-b. Plaintiff lists the proposed Amended Complaint's additions and claims that it provides a detailed description of Plaintiff's alleged contracts and transactions with Defendants. *Id.* Finally, Plaintiff claims that the proposed Amended Complaint specifies the compensatory, punitive, and statutory damages Plaintiff allegedly suffered as a result of Defendants' alleged actions. *Id.*

Plaintiff simultaneously filed his Motion for Leave to Amend the Complaint ("Mot. for Leave to Amend") (Doc. No. 31). The Motion states that Plaintiff seeks to "[c]orrect errors," "[s]pecify and clarify compensatory, punitive and statutory damages," add exhibits, add a count against Microsoft "pursuant to the Electronic Communications Privacy Act," add "an issue about Microsoft claiming to Plaintiff, TRUSTe and the court that Microsoft Frontbridge service

-2-

privacy policy is not licensed by TRUSTe," add "an issue and count relating to TRUSTe making

the representation that TRUSTe licenses all of Comcast's privacy polices when TRUSTe actually

only licenses some of them," and add a count "concerning Comcast's failure to adhere to 47

USC Sec. 551 and 47 C.F.R. §76.1716." Mot. for Leave to Amend ¶ 1a-g.

## ARGUMENT

## I.    PLAINTIFF'S MOTION TO AMEND THE COMPLAINT SHOULD BE DENIED BECAUSE THE PROPOSED AMENDMENT WOULD BE FUTILE

Leave to amend should be denied because the proposed Amended Complaint does not

cure any of the Complaint's deficiencies.  Indeed, a "trial court may properly deny leave to

amend where the amendment would not withstand a motion to dismiss." *Massarsky v. General*

*Motors Corp.*, 706 F.2d 111, 125 (3d Cir. 1983) (affirming denial of leave to amend complaint to

add New Jersey Law Against Discrimination claim because district court could not "conceive

that the jury would have found for plaintiff on this claim in view of its findings on the [Age

Discrimination in Employment Act] claim") (internal quotations omitted).  "[I]f the proposed

amendment is frivolous or advances a claim or defense that is legally insufficient on its face, the

court may deny leave to amend." *Witherspoon v. Rent-A-Car, Inc.*, 173 F. Supp. 2d 239, 243

(D.N.J. 2001) (denying leave to amend for futility where "it appear[ed] beyond doubt that the

Plaintiff [could not] prove facts sufficient to sustain his claim").  Generally, "the applicable

standard to determine futility is whether the amendment is sufficiently well-grounded in fact or

law to demonstrate that it is not a frivolous pursuit." *Philips v. Borough of Keyport*, 179 F.R.D.

140, 144 (D.N.J. 1998) (internal quotations and citation omitted).  Plaintiff's proposed additional

allegations do not meet this standard.  Consequently, Plaintiff should not be granted leave to

amend the Complaint.

## II.    THE PROPOSED AMENDED COMPLAINT'S NEWLY ADDED ALLEGATIONS FAIL TO STATE CLAIMS UPON WHICH RELIEF CAN BE GRANTED

Neither the Complaint nor the proposed Amended Complaint asserts any plausible claims against Defendants.  The proposed Amended Complaint, like the Complaint, advances claims that are legally insufficient on their face and should be dismissed for failure to state a claim.  The proposed Amended Complaint's new factual allegations fail to cure the Complaint's deficiencies.  Accordingly, the Court should grant Defendants' Motion to Dismiss.  Whether the Court first grants leave to amend or denies it as futile, the Court should dismiss this action for failure to state a claim upon which relief can be granted.

### A.    Plaintiff's Allegations That the Privacy Policies of Microsoft, Cisco, and TRUSTe Constitute Contracts with Plaintiff Fail as a Matter of Law

Plaintiff's proposed Amended Complaint alleges that the privacy policies found on the Web sites of Microsoft, Cisco, and TRUSTe constitute contracts between those Defendants and him.  Prop. Am. Compl. ¶¶ 26, 40, 60.  As noted in the Joint Memorandum and in TRUSTe's Memorandum of Law, Plaintiff's breach of contract claims against Microsoft, Cisco, and TRUSTe should be dismissed because Plaintiff makes no allegations to support a plausible claim that Defendants' privacy policies are enforceable contracts with him in which the terms of performance to be rendered by each party are definite and consideration was exchanged.  Joint Mem. at 18-19; TRUSTe Mot. at 14.  *See Borough of W. Caldwell v. Borough of Caldwell*, 26 N.J. 9, 24-25 (1958) (enforceable contract must be "sufficiently definite in its terms that the performance to be rendered by each party can be ascertained with reasonable certainty"); *Seaview Orthopaedics ex. rel. Fleming v. Nat'l Healthcare Res., Inc.*, 366 N.J. Super. 501, 508 (App. Div. 2004) ("It is well-settled that contracts are not enforceable in the absence of consideration, i.e., both sides must get something out of the exchange.").

-4-

Moreover, courts routinely dismiss breach of contract claims alleging violations of privacy policies posted on Web sites. *See Dyer v. Northwest Airlines Corps.*, 334 F. Supp. 2d 1196, 1199-1200 (D.N.D. 2004) (breach of contract claim premised on privacy policy posted on defendant's Web site dismissed as a matter of law because "broad statements of company policy do not generally give rise to contract claims"); *In re Northwest Airlines Privacy Litigation*, 2004 WL 1278459, at *6 (D. Minn. June 6, 2004) (court dismissed breach of contract claim premised on privacy policy and held that "privacy statement on Northwest's website did not constitute a unilateral contract" because "general statements of policy are not contractual").

Plaintiff's bare, conclusory allegation that Microsoft's, Cisco's, and TRUSTe's Web sites and privacy policies constitute contracts with him is plainly insufficient to state a claim. *See, e.g.*, *Perry v. Gold & Laine, P.C.*, 371 F. Supp. 2d 622, 626 (D.N.J. 2005) (in ruling on a Rule 12(b)(6) motion, courts reject "legal conclusions," "unsupported conclusions," "unwarranted references," "unwarranted deductions," "footless conclusions of law," and "sweeping legal conclusions in the form of actual allegations") (*citing Morse v. Lower Merion School Dist.*, 132 F.3d 902, 907, n.8 (3d Cir. 1997)). The most cursory review of the documents attached to the proposed Amended Complaint as Exhibits Q-R, V-X, and GG, respectively, demonstrates that they do *not* constitute enforceable contracts between Plaintiff and Microsoft, or Cisco, or TRUSTe. The documents do not establish privity between Plaintiff and Defendants, an exchange of mutual obligations or consideration, or any manifestation of intent by Defendants to be bound vis-à-vis Plaintiff.

**B.**    **Plaintiff's Proposed Claims and Allegations Against Microsoft Are Futile and Should Be Dismissed**

With regard to Microsoft, Plaintiff alleges in the Complaint that Microsoft "made false and misleading representations in violation of the New Jersey Consumer Fraud Act and/or has

failed to comply with its contractual agreements with Plaintiff." Compl. ¶ 76. Plaintiff also alleges that Microsoft "defamed [him] by placing his IP address on blacklists/blocklists for e-mail communications without allowing Plaintiff to review and correct, if necessary, the information that led to these blacklists/blocklist listings." *Id.* ¶ 81. The Complaint does not specify any damages as a result of Microsoft or any other Defendants' alleged conduct.

Plaintiff's proposed Amended Complaint asserts two new counts against Microsoft. First, it alleges that Microsoft "violated the Federal Wiretap Law [18 USC § 2510 et seq.] and caused harm to Plaintiff by monitoring Plaintiff's Internet communications." Prop. Am. Compl. ¶ 126. It then alleges that Microsoft "violated the Pen Register Act [18 USC § 3121 et seq.] and caused harm to Plaintiff by monitoring Plaintiff's Internet communications." Prop. Am. Compl. ¶ 127.

The allegations against Microsoft regarding the Federal Wiretap Act and the Pen Register Act are the same as those asserted against Defendants Comcast and Cisco in the Complaint. They should be dismissed against Microsoft for the same reasons they should be dismissed against Comcast and Cisco. In the Joint Memorandum, Defendants establish that the Communications Decency Act immunizes them from all the civil causes of action Plaintiff alleged. Joint Mem. at 5-7. With regard to the Federal Wiretap Act, Defendants establish, *inter alia*, that Plaintiff failed to allege the essential elements of a claim for communications interception. *Id.* at 7-15. With regard to the Pen Register Act, Defendants establish that Plaintiff's claims under the Act should be dismissed because the Act does not support a private right of action and because Plaintiff failed to assert facts that, if true, would amount to a violation. *Id.* 15-17. Microsoft joins in Comcast's and Cisco's arguments in section IV of the Joint Memorandum with regard to the Federal Wiretap Act and the Pen Register Act.

-6-

Plaintiff makes new factual allegations regarding Microsoft in his proposed Amended Complaint, but these allegations provide no meaningful factual support for his claims and thus fail to cure the deficiencies of the Complaint. Plaintiff proposes to allege: (1) that "[Plaintiff] is a customer of Microsoft and has purchased various software products such as operating systems" (Prop. Am. Compl. ¶ 6); (2) that "Microsoft's sale of software to Plaintiff constitutes 'the sale or advertisement of merchandise'" pursuant to the New Jersey Consumer Fraud Act ("NJCFA") (*id.* ¶ 32); and (3) that "Microsoft's Frontbridge network and e-mail services constitutes [sic] the 'sale or advertisement of merchandise'" pursuant to the NJCFA (*id.* ¶ 33).

In paragraph 6 of the proposed Amended Complaint, Plaintiff states that he is a Microsoft customer, but does not allege that he is a Microsoft customer in any way that relates to this case. Whether or not he owns a PC with a Microsoft Windows operating system or some other Microsoft software installed makes no difference to his claims here because those claims have nothing to do with Windows or any other Microsoft software.

He alleges that Microsoft's sale of software to him constitutes a sale under the NJCFA, (Prop. Am. Compl. ¶ 32), but not a sale that has anything to do with his NJCFA claim. He also alleges that Microsoft's Frontbridge network and e-mail services constitute a sale under the NJCFA, but his admission that he "did not 'sign up' for the Frontbridge service" (Prop. Am. Compl. ¶ 92b) and his failure to allege that he utilizes Microsoft's e-mail services, are fatal to his NJCFA claim. Even if he had alleged a sale covered by the NJCFA, he fails to allege any ascertainable loss as a result of an alleged NJCFA violation – a second fatal omission. *See Dabush v. Mercedes-Benz USA, LLC*, 378 N.J. Super. 105, 116 (App. Div. 2005) ("[A] private plaintiff *must* demonstrate an ascertainable loss of moneys or property, real or personal, as a result of the defendant's unlawful conduct.") (emphasis added) (internal quotations omitted).

-7-

In short, Plaintiff's new allegations are not "sufficiently well-grounded in fact or law." *See Philips*, *supra*, 179 F.R.D. at 144. Plaintiff's proposed Amended Complaint cannot withstand a motion to dismiss.

## C.   Plaintiff's Proposed Allegations Against TRUSTe are Futile and Should Be Dismissed

Plaintiff alleges in the Complaint that TRUSTe violated the NJCFA by making "false and misleading representations at its web site [sic]" related to its dispute resolution services. Compl. ¶ 53. Plaintiff further alleges that TRUSTe "failed to comply with its contractual requirements to offer a dispute resolution service ...." *Id.* The Complaint does not allege any damages due to TRUSTe's (or any other Defendant's) alleged conduct.

TRUSTe moved pursuant to Article III of the United States Constitution and Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the counts alleged against it in the initial Complaint ("TRUSTe Mot."). TRUSTe argued, *inter alia*, that Plaintiff lacked standing under both Article III and the NJCFA due to his failure to plead compensable damages. TRUSTe Mot. at 8-13. TRUSTe further argued that Plaintiff's claim against TRUSTe asserted under the NJCFA was fatally flawed, in that the Complaint is devoid of any allegations that there existed any consumer transaction between Plaintiff and TRUSTe. *Id.* at 13. Finally, TRUSTe pointed out that Plaintiff's failure to plead the existence of any contract between TRUSTe and him warranted dismissal of any contractual claim that Plaintiff purported to state against TRUSTe. *Id.* at 14. As TRUSTe argued in its Motion, all of these reasons – collectively and individually – demonstrate that Plaintiff can plead no set of facts that would state any claim against TRUSTe, and any such claims should be dismissed with prejudice.

Plaintiff's proposed Amended Complaint fails to cure his defective allegations as against TRUSTe in any meaningful way. The sum total of the new allegations that Plaintiff proposes to

add with respect to TRUSTe, in addition to the above discussion regarding TRUSTe's privacy

policy, amounts to the following: (i) TRUSTe's dispute resolution services constitute the "sale

or advertisement of merchandise" under the NJCFA (Prop. Am. Compl. ¶¶ 27-28); (ii) TRUSTe

"has intentionally deceived the public" by allegedly, falsely claiming that it certifies all of

defendant Comcast's privacy policies, when in fact it "only certifies privacy policies of some

specific Comcast web sites" (*id.* ¶ 111); and (iii) Plaintiff has suffered vague and undefined

"compensatory damages" by virtue of having his email account blocked (*id.* ¶ 134).  These new

allegations remain insufficient to state any claim against TRUSTe.

*First*, the conclusory allegations that TRUSTe's conduct falls within the purview of the

NJCFA are also off the mark, as Plaintiff fails to allege that TRUSTe was engaged in any

commercial transaction with him. *See, e.g., Directv v. Marino*, 2005 WL 1367232, *3 (D.N.J.

June 8, 2005) (dismissing NJCFA claim where no consumer transaction between plaintiff and

defendant had been alleged).[2]

*Second*, Plaintiff's new allegation that TRUSTe has somehow misled "the public" by

falsely representing the extent to which it certifies Defendant Comcast's privacy policies cannot

possibly save his claims against TRUSTe.  Even if true (which it is not), this allegation offers no

basis on which Plaintiff may establish standing to assert a claim against TRUSTe, as Plaintiff

fails to allege any individualized injury as a result of this supposed campaign of public deception

by TRUSTe. *See, e.g., Weinberg v. Sprint Corp.*, 173 N.J. 233, 246-47 (2002) (dismissing

claims brought under NJCFA where plaintiff failed to demonstrate any cognizable damages due

to defendant's alleged conduct).

---

[2] As discussed in detail *supra* at section II(A), Plaintiff's proposed Amended Complaint contains
no allegations to support a claim that TRUSTe's Web site and its privacy policy constitute an
enforceable contract with Plaintiff.

In sum, the allegations against TRUSTe that Plaintiff seeks leave to add do not come anywhere close to remedying the deficiencies in his claims against TRUSTe. Accordingly, Plaintiff's Motion for Leave to Amend should be denied as futile, and his claims against TRUSTe should be dismissed with prejudice.

**D.    Plaintiff's Proposed Allegations Against Comcast are Futile and Should Be Dismissed**

Plaintiff's proposed Amended Complaint with respect to Comcast fails for the same reasons it fails against the other Defendants. The proposed Amended Complaint, according to Plaintiff, purports to "[a]dd a count concerning Comcast's failure to adhere to 47 USC Sec. 551 and 47 C.F.R. § 76.1716." Mot. for Leave Amend ¶ 1d. In fact, the proposed Amended Complaint actually does nothing of the sort. To the contrary, Plaintiff's Complaint had already alleged that Comcast "violated the Cable Communications Policy Act of 1984 by not allowing Plaintiff access [to] his account information." Compl. ¶ 75. The proposed Amended Complaint, Count 22 at paragraph 125g, is virtually identical, but for the newly added insertion of the statutory citation, *i.e.*, 47 U.S.C. § 551, for the Cable Communications Policy Act of 1984, which he had referenced in the Complaint.

Notably, the proposed Amended Complaint adds nothing further in that regard. Conspicuously absent is the necessary sufficiently detailed recitation of facts or even the law that forms the basis for Plaintiff's conclusion that Comcast is liable under 47 U.S.C. § 551. The mere insertion of the statutory citation for the Cable Communications Policy Act of 1984 adds nothing to his deficient Complaint; it remains but the barest of assertions, completely lacking in substance. As set forth in Defendants' Joint Memorandum in support of their Motion to Dismiss, a complaint must present more than labels and conclusions. *See Bell Atlantic Corp. v. Twombley*, 559 U.S. 544 (2007). Sufficient factual allegations must be set forth so as to "raise a

-10-

right to relief above the speculative level." *Id.* at 555. The complaint must present something more than a naked assertion of an alleged violation and must recite "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. Plaintiff's proposed Amended Complaint, which does no more than add the statutory citation for the Cable Communications Policy Act of 1984, does nothing of the sort.

Plaintiff's proposed Amended Complaint also "cites" to a regulation of the Federal Communications Commission ("FCC"), 47 C.F.R. § 76.1716. Prop. Am. Compl. ¶ 109. However, even a cursory reading of that regulation, entitled "Subscriber records and public inspection file," makes clear that it has absolutely no bearing whatsoever on the instant case, and that it provides no right or remedy to an individual.[3] Rather, it is apparent that the only obligation imposed upon a cable operator by virtue of the cited regulation is to make documents available to the FCC. To state the obvious, the FCC is not a party to this action, and there has been no assertion that Comcast has failed to make any records available to the FCC. Plaintiff's reference to 47 C.F.R. § 76.1716 is inapt and totally fails to establish a viable cause of action. Plaintiff simply has no claim or right pursuant to 47 C.F.R. § 76.1716.

Plaintiff adds a new Count 23 against Comcast in which he asserts that Comcast should be liable for "*not* distributing Plaintiff PII to third parties and to the Court in violation of the Cable Communications Policy Act of 1984, 47 USC Sec. 551 and 47 C.F.R. § 76.1716." Prop. Am. Compl. ¶ 125h (emphasis added). Presumably, Plaintiff intended to assert a claim for the opposite of what he recites. In paragraph 120 of Plaintiff's proposed Amended Complaint, he asserts that "Comcast distributed Plaintiff's home address" by setting forth his home address (the

---

[3] 47 C.F.R. § 76.1716 reads as follows: "The operator of a cable television system shall make the system, its public inspection file, and its records of subscribers available for inspection upon request by an authorized representative of the [FCC] at any reasonable hour."

address where Plaintiff was served with Removal pleadings) in the proof of service filed on the

PACER System. *Id.* at ¶ 120. Plaintiff fails to recognize, *inter alia*, explicit language in

Comcast's privacy policy,[4] which states that Comcast

> may be required by law to disclose Personally Identifiable
> Information or other information about you or other users of the
> Comcast Web Services. These disclosures may be made with or
> without your consent, and with or without notice, in compliance
> with the terms of a subpoena, court order, search warrant, or other
> valid legal process. We may also disclose information about you
> or users of the Comcast Web Services when we believe in good
> faith that the disclosure of information is necessary to prevent
> financial loss, address suspected illegal activity, protect our rights
> or property, or prevent imminent physical harm.

Comcast Privacy Policy ¶ 12 (Exhibit FF to Prop. Am. Compl.). Clearly, the *de minimis*

disclosure complained of came about in the course of this very litigation when Comcast filed its

proof of service, a document required to be filed by applicable rules of Court. Such good faith

disclosure of information, required by Court rules as well as necessary to protect Comcast's

rights, violates no right of Plaintiff. Moreover, Plaintiff fails to address the obvious -- to wit,

that Comcast does not control the PACER System and cannot redact the subject information.

Plaintiff's remedy is to request that such information be sealed by the Court should he feel

aggrieved. In any event, even ignoring the foregoing arguments, Plaintiff's assertion in Count

23 of his Amended Complaint about pleadings filed by counsel is factually unrelated to the

subject matter of Plaintiff's Complaint against Comcast. It arises in the course of filing

pleadings in this action, and it is an immune activity.

---

[4] Comcast's privacy policy is attached as Exhibit FF to Plaintiff's proposed Amended Complaint.

## III.   PLAINTIFF'S PROPOSED DAMAGES ALLEGATIONS ARE ALSO FUTILE

In the Joint Memorandum in support of Defendants' Motion to Dismiss, Defendants

argue that the Complaint is fundamentally flawed because Plaintiff failed to assert any damages

or ascertainable loss as a result of Defendants' alleged actions. Joint Mem. at 19-20. Plaintiff's

proposed damages are flawed and insufficient to cure the deficiencies of the Complaint because

Plaintiff asserts, for example, damages where no individual cause of action exists and damages

for causes of action for which Defendants have immunity. Plaintiff's proposed Amended

Complaint purports to seek damages to compensate Plaintiff for numerous alleged harms, such as

his alleged inability to communicate via e-mail without disruption, his alleged inability to correct

profiles maintained by Defendants, and for past or future loss of earnings. Prop. Am. Compl. ¶

134j-o. Plaintiff requests punitive damages for the alleged violation of his privacy and purported

damage to his reputation, treble damages under the NJCFA, and statutory damages under the

Electronic Communications Privacy Act and the New Jersey Wiretapping and Electronic

Surveillance Control Act. *Id.* ¶ 134p-u.

Plaintiff's proposed damage allegations are futile because they offer nothing but the

barest, most conclusory assertions that Plaintiff has suffered some unknown quantum of

"compensatory damages" as a result of having his email account blocked. *Weiss v. First Unum*

*Life Ins.*, 2003 WL 25713970, at *5 (D.N.J. 2003) (dismissing claims under Fed. R. Civ. P.

12(b)(6) where "Plaintiff's vague and conclusory assertion that he was damaged because he

deferred purchases and lost medical benefits are wholly insufficient to establish a compensable

injury").[5] Accordingly, Plaintiff's proposed damages allegations are insufficient to withstand a

motion to dismiss.

---

[5] Even if Plaintiff's proposed damages allegations were sufficient on their face – which they are
Continued...

-13-

## **CONCLUSION**

For these reasons, Defendants request that the Court deny Plaintiff's Motion for Leave to

Amend the Complaint, or alternatively grant leave to amend and dismiss the Amended

Complaint, because Plaintiff's proposed Amended Complaint is futile and would not withstand a

motion to dismiss.

---

....Continued

not – they would still be insufficient to state a claim as against any of the Defendants because
Plaintiff does not allege that any of the Defendants' conduct caused, or contributed to, the
undefined damages he claims to have suffered.

Respectfully Submitted,

STRYKER, TAMS & DILL LLP
*Attorneys for Defendant*
*Comcast Cable Communications, LLC*

s/Harold Friedman

Harold Friedman

MORGAN, LEWIS & BOCKIUS LLP
*Attorneys for Defendant*
*Cisco Systems, Inc.*

s/Robert A. White

Robert A. White

FOLEY & LARDNER LLP
*Attorneys for Defendant*
*True Ultimate Standards Everywhere, Inc.*

s/Barry Felder

Barry Felder

MONTGOMERY, McCRACKEN, WALKER
& RHOADS, LLP
*Attorneys for Defendant*
*Microsoft Corporation*

s/Charles B. Casper

Charles B. Casper

Dated: November 4, 2009

## CERTIFICATE OF SERVICE

I, Harold Friedman, hereby certify that on the date listed below, a true and correct copy of the Joint Memorandum of Law in Opposition to Plaintiff's Motion for Leave to Amend the Complaint of Defendants Comcast Cable Communications, LLC, Cisco Systems, Inc., Microsoft Corporation, and True Ultimate Standards Everywhere, Inc. was served via electronic filing upon the following individual:

> Russ Smith
> P.O. Box 1860
> Ocean City, New Jersey 08226
> *Plaintiff, pro se*

> s/Harold Friedman
> Harold Friedman

Dated:  November 4, 2009

-16-

Westlaw.

Not Reported in F.Supp.2d, 2004 WL 1278459 (D.Minn.)
**(Cite as: 2004 WL 1278459 (D.Minn.))**

☞Only the Westlaw citation is currently available.

United States District Court,
D. Minnesota.
In re NORTHWEST AIRLINES PRIVACY LITI-
GATION
**No. Civ.04-126(PAM/JSM).**

June 6, 2004.

Eric James Belfi, Murray Frank & Sailer LLP, New
York, NY, Garrett D. Blanchfield, Jr., Mark
Reinhardt, Reinhardt Wendorf & Blanchfield, St
Paul, MN, Richard J. Fuller, Seymour J. Mansfield,
Mansfield Tanick & Cohen, Mpls, MN, Robert M.
Rothman, Samuel H. Rudman, Geller Rudman
PLLC, Melville, NY, for Plaintiffs.

Daniel James Brown, Theresa Marie Bevilacqua,
Thomas W. Tinkham, Dorsey & Whitney, Mpls, MN,
for Defendants.

MEMORANDUM AND ORDER

MAGNUSON, J.

**\*1** This matter is before the Court on a Motion to
Dismiss filed by Defendants Northwest Airlines Cor-
poration and Northwest Airlines, Inc. (collectively,
"Northwest"). Seven putative class actions have been
consolidated into a master case, and the Motion to
Dismiss applies to the Amended Consolidated Class
Action Complaint filed in the consolidated matter.
After the Motion to Dismiss was filed, Plaintiffs
sought a stay because the Judicial Panel on Multidis-
trict Litigation is considering a motion in a related
case to consolidate all similar cases nationwide. As
stated at the hearing, however, the Court will not stay
this matter. For the reasons that follow, the Court
finds that Plaintiffs have failed to state any claims on
which relief can be granted, and the Court therefore
dismisses all of the individual Complaints.

BACKGROUND

Plaintiffs are customers of Defendant Northwest Air-
lines, Inc. ("Northwest"). After September 11, 2001,
the National Aeronautical and Space Administration
("NASA") requested that Northwest provide NASA
with certain passenger information in order to assist
NASA in studying ways to increase airline security.
Northwest supplied NASA with passenger name re-
cords ("PNRs"), which are electronic records of pas-
senger information. PNRs contain information such
as a passenger's name, flight number, credit card data,
hotel reservation, car rental, and any traveling com-
panions.

Plaintiffs contend that Northwest's actions constitute
violations of the Electronic Communications Privacy
Act ("ECPA"), 18 U.S.C. § 2701 *et seq.,* the Fair
Credit Reporting Act ("FCRA"), 15 U .S.C. § 1681,
and Minnesota's Deceptive Trade Practices Act
("DTPA"), Minn.Stat. § 325D.44, and also constitute
invasion of privacy, trespass to property, negligent
misrepresentation, breach of contract, and breach of
express warranties. The basis for most of Plaintiffs'
claims is that Northwest's website contained a pri-
vacy policy that stated that Northwest would not
share customers' information except as necessary to
make customers' travel arrangements. Plaintiffs con-
tend that Northwest's provision of PNRs to NASA
violated Northwest's privacy policy, giving rise to the
legal claims noted above.

Northwest has now moved to dismiss the Amended
Consolidated Class Action Complaint (hereinafter
"Amended Complaint"). Northwest contends that
Plaintiffs cannot make out a claim under either the
ECPA or the FCRA, that some of Plaintiffs' claims
are preempted by the Airline Deregulation Act, 49
U.S.C. § 41713(b)(1), and that the remainder of
Plaintiffs' claims fail as a matter of law.

DISCUSSION

A. Standard of Review

When analyzing a motion to dismiss under Rule
12(b)(6) of the Federal Rules of Civil Procedure, the
Court must construe the allegations in the pleadings
and make all reasonable inferences arising from the
pleadings in favor of the non-moving party. *Morton
v. Becker,* 793 F.2d 185, 187 (8th Cir.1986). The

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2004 WL 1278459 (D.Minn.)
**(Cite as: 2004 WL 1278459 (D.Minn.))**

Court should not, however, "blindly accept the legal conclusions drawn by the pleader from the facts." *Id.* A motion to dismiss will be granted only if "it appears beyond doubt that the [non-movants] can prove no set of facts which would entitle [them] to relief." *Id.; see also Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

B. The Electronic Communications Privacy Act

**\*2** The ECPA prohibits a person or entity from

(1) intentionally access[ing] without authorization a facility through which an electronic communication service is provided; or

(2) intentionally exceeds an authorization to access that facility;

and thereby obtains, alters, or prevents authorized access to a wire or electronic communication while it is in electronic storage in such system shall be punished....

18 U.S.C. § 2701(a). Plaintiffs argue that Northwest's access to its own electronic communications service is limited by its privacy policy, and that Northwest's provision of PNRs to NASA violated that policy and thus constituted unauthorized access to the "facility through which an electronic communication service is provided" within the meaning of this section. Plaintiffs also allege that Northwest violated § 2702 of the ECPA, which states that "a person or entity providing an electronic communications service to the public shall not knowingly divulge to any person or entity the contents of a communication while in electronic storage by that service." 18 U.S.C. § 2702(a)(1).

Northwest argues first that it cannot violate § 2702 because it is not a "person or entity providing an electronic communications service to the public." Plaintiffs contend that, because the Amended Complaint alleges that Northwest is a provider of electronic communications service, and because the Court must accept the facts in the Amended Complaint as true, Northwest's Motion to Dismiss must fail.

Plaintiffs misapprehend the nature of the inquiry on a

Motion to Dismiss. Although the Court must accept as true the well-pleaded facts in the Amended Complaint, the Court need not, and indeed should not, accept as true the legal conclusions the Amended Complaint draws from the facts. *See Morton,* 793 F.2d at 187. Whether Northwest is a provider of electronic communications service is a legal question, not a factual issue.

Defining electronic communications service to include online merchants or service providers like Northwest stretches the ECPA too far. Northwest is not an internet service provider. In fact, Northwest purchases its electronic communications service from a third party, Worldspan. Under these circumstances, Northwest is simply not an electronic communications service provider, and therefore cannot violate § 2702. *See, e.g., Crowley v. CyberSource Corp.,* 166 F.Supp.2d 1263 (N.D.Cal.2001) (finding online retailer not electronic communications service provider because retailer purchased electronic communications service from provider and did not independently provide such service to public).

Similarly, Northwest's conduct as outlined in the Amended Complaint does not constitute a violation of § 2701. Plaintiffs' claim is that Northwest improperly disclosed the information in PNRs to NASA. Section 2701 does not prohibit improper disclosure of information. Rather, this section prohibits improper access to an electronic communications service provider or the information contained on that service provider. There is no dispute that Northwest obtained Plaintiffs' personal information properly, in the ordinary course of business. Plaintiffs' complaint is not with how Northwest obtained the information, but with how Northwest subsequently used the information. Because § 2701 does not speak to the use of the information, it does not apply and Plaintiffs' claims under § 2701 fail as a matter of law.

C. The Fair Credit Reporting Act

**\*3** The FCRA was enacted "to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681(a). Plaintiffs encourage the Court to apply the FCRA liberally, to further the remedial purposes of the statute. As with Plaintiffs' claims under the ECPA, however, Plaintiffs' FCRA claims require not liberal ap-

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2004 WL 1278459 (D.Minn.)
**(Cite as: 2004 WL 1278459 (D.Minn.))**

plication of the statute, but wholesale disregard of the statute's purposes and definitions.

Plaintiffs contend that Northwest violated the FCRA by furnishing PNRs to NASA without first obtaining Plaintiffs' written consent to do so. (Am. Compl. ¶ 88; 15 U.S.C. § 1681b(a)(2).) This allegation presupposes that Northwest or Worldspan is a "consumer reporting agency" and that PNRs are "consumer reports" within the meaning of the statute.

The FCRA defines "consumer reporting agency" as

any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties....

15 U.S.C. § 1681a(f). Under no possible interpretation of this definition is Northwest a "consumer reporting agency." Worldspan may be a "consumer reporting agency," but only if the PNRs Worldspan maintains for Northwest constitute "consumer reports."

The term "consumer report" means any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purposes of serving as a factor in establishing the consumer's eligibility for-

(A) credit or insurance to be used primarily for personal, family, or household purposes;

(B) employment purposes; or

(C) any other purpose authorized under section 1681b of this title.

Id. § 1681a(d).

Even accepting as true Plaintiffs' allegations regarding what information is contained in PNRs, PNRs do not constitute "consumer reports" within the definition of the FCRA. At most, a PNR contains informa-

tion about a consumer's credit card, including perhaps the consumer's balance on that credit card. This limited information cannot fairly be said to be information "bearing on a consumer's credit worthiness, credit standing, [or] credit capacity." Similarly, information such as dietary restrictions and traveling partners is not information on the consumer's "personal characteristics[ ] or mode of living." The FCRA does not apply to the information contained in PNRs. Plaintiffs' claims under the FCRA fail as a matter of law.

**D. State- and Common-Law Claims**

*1. Preemption*

Northwest argues that Plaintiffs' claims under the DTPA and for negligent misrepresentation are preempted by the Airline Deregulation Act ("ADA"), 49 U.S.C. § 41713(b). This section provides that "a State ... may not enact or enforce a law ... related to a price, route, or service of an air carrier." 49 U.S.C. § 41713(b)(1). The scope of this preemption provision is undisputedly broad, and applies to preempt Plaintiffs' claims if those claims relate to a "price, route, or service" of Northwest.

*4 The Supreme Court has determined that a law or claim "relates to" a price, route, or service if that claim has a "connection with or reference to" an airline's rates, routes, or services. *Morales v. Trans World Airlines, Inc.,* 504 U.S. 374, 384, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992). The Court has further elucidated that the preemption provision "bars state-imposed regulation of air carriers." *Am. Airlines, Inc. v. Wolhens,* 513 U.S. 219, 222, 115 S.Ct. 817, 130 L.Ed.2d 715 (1995). In the *Wolhens* case, the Court determined that the ADA preempted the plaintiffs' claims under the Illinois Consumer Fraud and Deceptive Business Practices Act. Northwest argues that Plaintiffs' claims under the Minnesota DTPA and for negligent misrepresentation are almost indistinguishable from the claims found to be preempted in *Wolhens* .

The *Wolhens* Court noted that "the potential for intrusive regulation of airline business practices [is] inherent in state consumer protection legislation," such as the Minnesota Deceptive Trade Practices Act. *Id.* at 227-28. Plaintiffs contend that the *Wolhens* matter involved an airline's marketing practices,

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2004 WL 1278459 (D.Minn.)
**(Cite as: 2004 WL 1278459 (D.Minn.))**

while their claims here involve an airline's privacy policy. This distinction is not persuasive, however. Plaintiffs' claim that Northwest's failure to abide by its privacy policy when providing services to customers on its website violates the DTPA is strikingly similar to the plaintiffs' claims in *Wohlens* that the airline violated its own policies by changing its frequent flyer program. Plaintiffs' claims under the DTPA at the least relate to Northwest's services and are preempted by the ADA. Similarly, Plaintiffs' negligent misrepresentation claim, which raises the same contentions raised in their DTPA claim, is preempted by the ADA.

### 2. Remaining Claims

Finally, Northwest argues that Plaintiffs' remaining claims fail to state a claim on which relief can be granted. These claims are: trespass to property, intrusion upon seclusion, breach of contract, and breach of express warranties.

### a. Trespass

To state a claim for trespass to property, Plaintiffs must demonstrate that they owned or possessed property, that Northwest wrongfully took that property, and that Plaintiffs were damaged by the wrongful taking. *H. Christiansen & Sons, Inc. v. City of Duluth,* 225 Minn. 475, 31 N.W.2d 270, 274 (Minn.1948). Plaintiffs contend that the information contained in the PNRs was Plaintiffs' property and that, by providing that information to NASA, Northwest wrongfully took that property.

As a matter of law, the PNRs were not Plaintiffs' property. Plaintiffs voluntarily provided some information that was included in the PNRs. It may be that the information Plaintiffs provided to Northwest was Plaintiffs' property. However, when that information was compiled and combined with other information to form a PNR, the PNR itself became Northwest's property. Northwest cannot wrongfully take its own property. Thus, Plaintiffs' claim for trespass fails.

### b. Intrusion Upon Seclusion

**\*5** Intrusion upon seclusion exists when someone "intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private

affairs or concerns ... if the intrusion would be highly offensive to a reasonable person." *Lake v. Wal-Mart Stores, Inc.,* 582 N.W.2d 231, 233 (Minn.1998) (quoting Restatement (Second) of Torts § 625B). Thus, to make out a claim for intrusion upon seclusion, Plaintiffs must show that the alleged intrusion would be highly offensive to a reasonable person. The Court may properly preliminarily determine whether the alleged intrusion is sufficiently offensive to state a claim for intrusion upon seclusion. *Bauer v. Ford Motor Credit Co.,* 149 F.Supp.2d 1106, 1109 (D.Minn.2001) (Doty, J.). When making this determination, the Court should consider the "degree of intrusion, the context, conduct and circumstances surrounding the intrusion as well as the intruder's motives and objectives, the setting into which he intrudes, and the expectations of those whose privacy is invaded." *Id.* (citation omitted).

In this instance, Plaintiffs voluntarily provided their personal information to Northwest. Moreover, although Northwest had a privacy policy for information included on the website, Plaintiffs do not contend that they actually read the privacy policy prior to providing Northwest with their personal information. Thus, Plaintiffs' expectation of privacy was low. Further, the disclosure here was not to the public at large, but rather was to a government agency in the wake of a terrorist attack that called into question the security of the nation's transportation system. Northwest's motives in disclosing the information cannot be questioned. Taking into account all of the factors listed above, the Court finds as a matter of law that the disclosure of Plaintiffs' personal information would not be highly offensive to a reasonable person and that Plaintiffs have failed to state a claim for intrusion upon seclusion.

### c. Breach of Contract and Express Warranty

Northwest contends that the privacy policy on Northwest's website does not, as a matter of law, constitute a unilateral contract, the breach of which entitles Plaintiffs to damages. Northwest also argues that, even if the privacy policy constituted a contract or express warranty, Plaintiffs' contract and warranty claims fail because Plaintiffs have failed to plead any contract damages.

Whether a person's statements constitute a unilateral contract is a question of law for the Court to deter-

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2004 WL 1278459 (D.Minn.)
**(Cite as: 2004 WL 1278459 (D.Minn.))**

mine. *Martens v. Minn. Mining & Mfg. Co.,* 616 N.W.2d 732, 740 (Minn.2000). Plaintiffs' rely on the following statement from Northwest's website as the basis for their contract and warranty claims:

When you reserve or purchase travel services through Northwest Airlines nwa.com Reservations, we provide only the relevant information required by the car rental agency, hotel, or other involved third party to ensure the successful fulfillment of your travel arrangements.

**\*6** (Compl.¶ 49.) As noted above, Plaintiffs do not allege that they actually read this privacy statement prior to providing Northwest with their personal information, although they do generally allege that they "relied to their detriment" on this policy. (*Id.* ¶ 136.)

The usual rule in contract cases is that "general statements of policy are not contractual." *Martens,* 616 N.W.2d at 741 (quotations omitted). In the employment context, the Minnesota Supreme Court has found that statements in an employee handbook as specific as "[a] person is not dismissed without cause, and it is customary to give a warning and an opportunity to 'make good' before final dismissal" did not create an employment contract that altered the presumed at-will employment relationship. *Cederstrand v. Lutheran Bhd.,* 263 Minn. 520, 117 N.W.2d 213, 215-16 (Minn.1962). The court characterized the statement as a "general polic[y], not an offer of contractual character." *Id.* at 222.

The privacy statement on Northwest's website did not constitute a unilateral contract. The language used vests discretion in Northwest to determine when the information is "relevant" and which "third parties" might need that information. *See Grenier v. Air Express Int'l Corp.,* 132 F.Supp.2d 1198, 1201 (D.Minn.2001) (Doty, J.). Moreover, absent an allegation that Plaintiffs actually read the privacy policy, not merely the general allegation that Plaintiffs "relied on" the policy, Plaintiffs have failed to allege an essential element of a contract claim: that the alleged "offer" was accepted by Plaintiffs. *Id.* at 1200. Plaintiffs' contract and warranty claims fail as a matter of law.

Even if the privacy policy was sufficiently definite and Plaintiffs had alleged that they read the policy before giving their information to Northwest, it is

likely that Plaintiffs' contract and warranty claims would fail as a matter of law. Defendants point out that Plaintiffs have failed to allege any contractual damages arising out of the alleged breach. As Defendants note, the damages Plaintiffs claim are damages arising out of the torts alleged in the Amended Complaint, not damages arising out of the alleged contract. Damages are an essential element of a breach of contract claim, and the failure to allege damages would be fatal to Plaintiffs' contract claims. *Sloggy v. Crescent Creamery Co.,* 72 Minn. 316, 75 N.W. 225, 226 (Minn.1898).

CONCLUSION

Plaintiffs' claims under the ECPA and FCRA fail as a matter of law. Plaintiffs' claims under the Minnesota DTPA and for negligent misrepresentation are preempted, and Plaintiffs' remaining common-law claims fail to state claims on which relief can be granted. Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiffs' Motion to Stay (Clerk Doc. No. 19) is DENIED; and

2. Defendants' Motion to Dismiss (Clerk Doc. No.13) is GRANTED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

D.Minn.,2004.
In re Northwest Airlines Privacy Litigation
Not Reported in F.Supp.2d, 2004 WL 1278459 (D.Minn.)

END OF DOCUMENT

Westlaw.

Not Reported in F.Supp.2d, 2005 WL 1367232 (D.N.J.)
**(Cite as: 2005 WL 1367232 (D.N.J.))**

**H**Only the Westlaw citation is currently available.

United States District Court,
D. New Jersey.
DIRECTV, INC., Plaintiff,
v.
Michael J. MARINO, et al. Defendants.
**No. Civ. 03-5606(GEB).**

June 8, 2005.

David Andrew Cohen, Saiber, Schlesinger, Satz &
Goldstein, LLC, Newark, NJ, for Plaintiff.

Jonathan J. Sobel, Galerman & Tabakin, LLP, Voor-
hees, NJ, Steven J. Abelson, Freehold, NJ, for De-
fendants.

MEMORANDUM OPINION

BROWN, J.

**\*1** This matter comes before the Court upon plaintiff
DIRECTV's ("Plaintiff" or "DIRECTV") motion to
dismiss defendant Dave Richards' ("Defendant")
counterclaim pursuant to Fed.R.Civ.P. 12(b)(6) for
failure to state a claim upon which relief may be
granted. DIRECTV also seeks to recover its attor-
neys' fees associated with this motion. The Court has
jurisdiction over this matter pursuant to 28 U.S.C. §
1331. The Court, having considered the parties' sub-
missions and decided the matter without oral argu-
ment pursuant to Fed.R.Civ.P. 78, will grant
DIRECTV's motion and award attorneys' fees.

I. BACKGROUND

On November 25, 2003, DIRECTV instituted this
action against several named defendants,<sup>FN1</sup> including
Dave Richards, alleging violation of the Federal
Communications Act of 1934 ("the Communications
Act"), 47 U.S.C. § 605, and the Electronic Commu-
nications Privacy Act ("the Privacy Act"), 18 U.S.C.
§§ 2510-2521. See Complaint ¶ 5.

FN1. All other defendants in this action have

settled with DIRECTV.

DIRECTV is a direct broadcast satellite provider that
delivers television programming to millions of
homes and businesses across the nation. See Complaint ¶ 1.
DIRECTV invested over $1.25 billion in developing
its direct broadcast satellite system. Id. In order to
secure and prevent unauthorized viewing of its pro-
gramming, DIRECTV encrypts, or electronically
scrambles, its satellite transmissions. Id. at ¶ 2.
DIRECTV has been plagued by the proliferation of
companies engaged in the sale of illegal equipment
that unscrambles their signal and allows users to view
their programming for free. With the assistance of
law enforcement authorities, DIRECTV has engaged
in an aggressive campaign designed to identify the
manufacturers and distributors of pirate access de-
vices and the individuals purchasing them and re-
cover lost revenue via legal actions.

On or around December 1, 2001, DIRECTV executed
Writs of Seizure upon an internet-based seller, The
Computer Shanty. Id. at ¶ 3. Through its website, The
Computer Shanty was allegedly selling pirate access
devices that are used to illegally intercept transmis-
sion signals, including DIRECTV's programming. Id.
DIRECTV acquired The Computer Shanty's business
records and commenced actions against those indi-
viduals who allegedly purchased illegal devices for
resale or to intercept DIRECTV's programming for
unauthorized viewing. Id.

DIRECTV alleges that Defendant purchased pirate
access devices over the internet on The Computer
Shanty's website. Id. at ¶ 13. On or about May 30,
2001, Defendant allegedly purchased two devices;
namely, two "Boot Loader Boards." Id. at ¶ 13(a).
These devices were shipped to Defendant's home in
Lodi, New Jersey. Id. DIRECTV claims that Defen-
dant's actions violate Section 605 of the Communica-
tions Act and Sections 2510-2521 of the Privacy Act.

On August 31, 2004, Defendant filed a motion to
dismiss DIRECTV's complaint and a motion to quash
the third-party subpoena on PayPal.<sup>FN2</sup> On October
14, 2004, this Court denied both motions. Subse-
quently, on October 18, 2004, Defendant filed an
answer and counterclaim, asserting that DIRECTV

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 1367232 (D.N.J.)
**(Cite as: 2005 WL 1367232 (D.N.J.))**

had engaged in false, misleading and deceptive acts and practices in violation of the New Jersey Consumer Fraud Act, N.J. STAT. ANN.. §§ 56:8-2 and 56:8-19, *et seq.,* by circulating derogatory and inaccurate information regarding Defendant's financial responsibility and credit worthiness ("Counterclaim"), causing him to suffer emotional and financial damages. *See* Counterclaim ¶¶ 6-31. By letter dated November 3, 2004, DIRECTV advised Sobel that it believed the Counterclaim was patently frivolous and demanded that it be withdrawn. During a November 15, 2004 Telephonic Status Conference with Magistrate Judge John J. Hughes, the parties addressed Defendant's counterclaim. Judge Hughes' November 19, 2004 Scheduling Order states: "In the event that Defendant Richards does not withdraw his Counterclaim, Plaintiff may, at any time, move to dismiss Defendant Richards' Counterclaim and may seek its attorney's fees in connection therewith." *See* Scheduling Order, entered November 19, 2004[52].

> FN2. On February 17, 2004, Defendant's counsel, Jonathan J. Sobel, Esq. ("Sobel") also filed a motion to dismiss DIRECTV's complaint against two other named defendants, Aaron Kremble and Richard Yoss. This Court denied both motions on March 15, 2005.

**\*2** Defendant has not withdrawn the Counterclaim. On December 1, 2004, DIRECTV filed the instant motion to dismiss the Counterclaim and seeks its attorneys' fees and costs associated with the motion.

II. ANALYSIS

A. *Standard for a Motion to Dismiss*

A motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) may be granted only if, accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief. *Oran v. Stafford,* 226 F.3d 275, 279 (3d Cir.2000); *Langford v. City of Atl. City,* 235 F.3d 845, 850 (3d Cir.2000); *Bartholomew v. Fischl,* 782 F.2d 1148, 1152 (3d Cir.1986). The Court may not dismiss a complaint unless plaintiff can prove no set of facts that would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Angelastro v. Prudential-Bache Sec., Inc.,* 764 F.2d 939, 944 (3d Cir.1985),

*cert. denied,* 474 U.S. 935, 106 S.Ct. 267, 88 L.Ed.2d 274 (1985). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

Under Rule 12(b)(6), the Court must "accept the allegations in the complaint as true, and draw all reasonable factual inferences in favor of the plaintiff. [The motion can be granted] only if no relief could be granted under any set of facts that could be proved." *Turbe v. Gov't of the V.I.,* 938 F.2d 427, 428 (3d Cir.1991) (citing *Unger v. Nat'l Residents Matching Program,* 928 F.2d 1392, 1394-95 (3d Cir.1991)); *see also Langford,* 235 F.3d at 850; *Dykes v. SE. Pa. Transp. Auth.,* 68 F.3d 1564, 1565, n. 1 (3d Cir.1995), *cert. denied,* 517 U.S. 1142, 116 S.Ct. 1434, 134 L.Ed.2d 556 (1996); *Piecknick v. Commw. of Pa.,* 36 F.3d 1250, 1255 (3d Cir.1994); *Jordan v. Fox, Rothschild, O'Brien & Frankel,* 20 F.3d 1250, 1261 (3d Cir.1994). A complaint may be dismissed for failure to state a claim where it appears beyond any doubt "that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984).

A complaint should not be dismissed unless it appears beyond doubt that "the facts alleged in the complaint, even if true, fail to support the claim." *Ransom v. Marrazzo,* 848 F.2d 398, 401 (3d Cir.1988). Legal conclusions made in the guise of factual allegations, however, are given no presumption of truthfulness. *Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986); *see also Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir.1997) ("[A] court need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss.").

B. *Defendant's Counterclaim Must Be Dismissed Because DIRECTV And Defendant Did Not Engage In A Consumer Transaction*

Defendant contends that DIRECTV has engaged in a campaign designed to undermine Defendant's financial responsibility and credit worthiness by disseminating false, misleading and deceptive information in violation of the New Jersey Consumer Fraud Act. *See* Counterclaim ¶¶ 6-31. More specifically, Defendant

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 1367232 (D.N.J.)
(Cite as: 2005 WL 1367232 (D.N.J.))

alleges that DIRECTV's conduct violates Sections 56:8-2 and 56:8-19 of the New Jersey Consumer Fraud Act. *See* N.J. STAT. ANN.. §§ 56:8-2 and 56:8-19 (2005). Section 56:8-2 provides, in pertinent part that:

**\*3** The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice.

N.J. STAT. ANN.. §§ 56:8-2 (2005). Section 56:8-19 provides a private right of action for conduct proscribed by the statute.

The absence of a consumer transaction between the parties is fatal to Defendant's counterclaim. The Supreme Court of New Jersey has clarified that the New Jersey Consumer Fraud Act is

aimed basically at unlawful sales and advertising practices designed to induce *consumers* to purchase merchandise or real estate ... The legislative concern was over sharp practices and dealings in the marketing of merchandise and real estate whereby the *consumer* could be victimized by being lured into a purchase through fraudulent, deceptive or other similar kind of selling or advertising practices.

*Daaleman v. Elizabethtown Gas Co.,* 77 N.J. 267, 390 A.2d 566, 568-69 (N.J.1978) (emphasis added). Put simply, the Act is intended to protect consumers engaging in consumer transactions. *See J & R Ice Cream Corp. v. California Smoothie Licensing Corp.,* 31 F.3d 1259, 1272 (3d Cir.1994). Further, New Jersey courts have clarified that the New Jersey Consumer Fraud Act only applies to "bona fide consumers" of a product. *See Grauer v. Norman Chevrolet GEO,* 321 N.J.Super. 547, 729 A.2d 522, 524 (N.J.Super. Ct. Law Div.1998). In the present case, even drawing all favorable inferences in Defendant's favor, it is impossible to find that a bona fide consumer transaction existed between the parties.

On the contrary, this entire litigation is premised on the absence of a legitimate consumer transaction; that is, the underlying facts allege that Defendant was illegally intercepting DIRECTV's programming without paying for it. *See DIRECTV, Inc. v. Pepe,* 03-2424 (Katharine S. Hayden, U.S.D.J.) (holding that the defendant's counterclaim that DIRECTV's initiation and pursuit of claims that defendant illegally intercepted its' signal did not violate the New Jersey Consumer Fraud Act because "[t]he actual *absence* of a consumer relationship is the focus of the lawsuit against [the defendant].") (emphasis in original). This Courts determination that DIRECTV's complaint could succeed as a matter of law is antithetical to any contention that their conduct somehow violated the New Jersey Consumer Fraud Act. Further, Defendant's contention that his status as a legitimate subscriber of DIRECTV's programming somehow brings his counterclaim within the purview of the New Jersey Consumer Fraud Act is devoid of merit. Defendant is attempting to obscure the facts underlying DIRECTV's claims. That Defendant may also pay for some of DIRECTV's programming is entirely irrelevant to whether or not Defendant purchased pirate access devices to illegally intercept DIRECTV's signal.[FN3] Therefore, the Court finds that Defendant's counterclaim must be dismissed.

> FN3. Defendant also appears to argue that an extension of the New Jersey Consumer Fraud Act to cover DIRECTV's alleged conduct is warranted. The Court strongly disagrees. The Act is to be liberally construed in favor of *the consumer.* As discussed above, there is no consumer transaction in this case.

C. *DIRECTV Is Entitled To Attorneys' Fees*

**\*4** By letter dated November 3, 2004, DIRECTV demanded that Sobel withdraw the counterclaim.[FN4] In the letter, DIRECTV advised Sobel that it regarded the Counterclaim as "patently frivolous," directing him to Judge Hayden's opinion in *DIRECTV v. Pepe.* The letter advised Sobel that DIRECTV would seek sanctions if he did not withdraw the counterclaim. Significantly, DIRECTV alleges that Sobel has asserted the identical counterclaim on behalf of fourteen (14) other defendants in actions brought by DIRECTV under the Communications Act and Pri-

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 1367232 (D.N.J.)
**(Cite as: 2005 WL 1367232 (D.N.J.))**

vacy Act and has voluntarily dismissed this counter-claim in all fourteen (14) instances after DIRECTV filed a motion to dismiss. In his opposition brief, Sobel does not dispute the veracity of these allegations. Instead, Sobel merely argues that whether or not he asserted and subsequently withdrew similar or identical counterclaims in other actions is irrelevant. Sobel is only partially correct. White it is true that his conduct in these other actions is irrelevant to whether the Counterclaims must be dismissed as a matter of law, the Court finds this conduct to be clearly relevant to the question of whether attorneys' fees are appropriate in this case.

> FN4. The letter also requested that Sobel withdraw the identical counterclaim asserted in three other actions brought by DIRECTV against his clients. *See DIRECTV, Inc. v. Cimiluca* (Gary Hemburger), Civ. No. 03-2422; *DIRECTV, Inc. v. Minnick* (Jim Minnick), Civ. No. 03-311; *DIRECTV, Inc. v. Minnick* (Martha Grubb), Civ. No. 03-311.

Further, this issue was discussed by the parties during a November 15, 2004 telephonic status conference with Judge Hughes. During that call, DIRECTV advised Judge Hughes that it believed the counterclaim was patently frivolous and that Sobel had voluntarily dismissed identical claims on fourteen (14) other occasions. Judge Hughes addressed this issue in his November 18, 2004 Scheduling Order, specifically stating: "In the event that Defendant Richards does not withdraw his Counterclaim, Plaintiff may, at any time, move to dismiss Defendant Richards' Counterclaim and may seek its attorney's fees in connection therewith." [FN5] *See* Scheduling Order, entered November 19, 2004[52].

> FN5. Defendant contends "that the portion of Judge Hughes' Order which authorizes Plaintiff to seeks fees is inappropriate" because Judge Hughes lacked the "authority to impose such a condition in a Scheduling Order." Defendant's Opposition Brief at 15-16. Defendant's argument is without merit. Local Civil Rule 72.1(a)(3)(C) provides that "[a]s part of the Magistrate Judge's general supervision of the civil calendar, the Magistrate Judge shall conduct scheduling conferences and enter scheduling orders in accor-

dance with Fed.R.Civ.P. 16 ..." Local Civ. R. 72.1(a)(3)(C) (2005). Federal Rule of Civil Procedure 16(b)(6) provides that the scheduling order may also include "any other matters appropriate in the circumstances of the case." Fed.R.Civ.P. 16(b)(6) (2005). Accordingly, this Court concludes that Judge Hughes had the authority to include a provision permitting DIRECTV to move for attorneys' fees and costs in the November 18, 2004 Scheduling Order.

> Defendant also contends that DIRECTV's motion to dismiss the Counterclaim is untimely. However, DIRECTV's November 3 letter to Sobel evidences that Sobel consented to an extension of time to answer or otherwise respond until he advised whether he intended to withdraw the Counterclaim. Attorneys are encouraged to work cooperatively and extend professional courtesies. This Court would undermine those policies if it were to permit Defendant to now argue that DIRECTV's motion should be considered untimely. Further, during a November 15, 2004 teleconference with Judge Hughes, DIRECTV raised its' position that the Counterclaim was frivolous and was granted permission to seek attorneys' fees should Sobel not withdraw the motion. Judge Hughes November 18, 2004 Order permitted DIRECTV to move to dismiss and seek fees and costs at any time. As discussed above, Judge Hughes had the authority to enter the November 18, 2004 Scheduling Order. Moreover, Defendant never asserted that a motion to dismiss filed by DIRECTV should be considered untimely nor did he contest the contents of Judge Hughes' November 15 Order. As such, Defendant is precluded by the doctrine of laches from now arguing that the motion is untimely. Therefore, this Court concludes that DIRECTV's motion was timely filed.

In light of these facts and this Court's determination that the Counterclaim is entirely without merit, the Court holds that DIRECTV is entitled to the attorneys' fees and costs incurred in addressing the Coun-

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 1367232 (D.N.J.)
**(Cite as: 2005 WL 1367232 (D.N.J.))**

terclaim. DIRECTV placed Sobel on notice two times-via its November 3, 2004 letter and during the November 15, 2004 teleconference with Judge Hughes-that it believed his claims to be patently frivolous. The letter pointed Sobel to Judge Hayden's decision in *Pepe* which pointedly concluded that the identical counterclaim could not be sustained under the Consumer Fraud Act because there was no consumer transaction.[FN6] Further, Sobel's decision to voluntary withdraw similar or identical counterclaims in fourteen (14) other DIRECTV actions is circumstantial evidence that Sobel understands that the Counterclaim has no basis in law or in fact. Further, as discussed above, this Court already determined that DIRECTV's claims had merit when it denied Defendant's motion to dismiss. That holding is clearly inapposite to the success of the Counterclaim. Accordingly, the Court concludes that it is appropriate to award DIRECTV the attorneys' fees incurred in association with this motion.

> FN6. For the reasons discussed in Section II.B., this Court finds the reasoning in *Pepe* to be sound. As discussed *infra*, in its' November 3 letter, DIRECTV cautioned Sobel that it believed the Counterclaim was frivolous and cited to *Pepe*. The Court considers this to be circumstantial evidence that Sobel was aware that the Counterclaim was frivolous yet chose not to withdraw it.

**\*5** DIRECTV requests fees in the amount of $1,343.00, which allegedly represents 7.9 hours of associate time at the rate of $170.00 per hour.[FN7] *See* DIRECTV Reply Brief. However, DIRECTV has failed to submit an appropriate affidavit of services comporting with Local Civil Rule 54.1. Without an affidavit of services, this Court is unable to determine whether this amount is reasonable and justified under the circumstances. Accordingly, DIRECTV is directed to submit an appropriate affidavit of services within thirty (30) days of the entry of the Order accompanying this Memorandum Opinion.

> FN7. Counsel for DIRECTV, David A. Cohen, Esq. ("Cohen"), represents in the reply brief that "[he] has[s] not sought reimbursement for any of [his] time reviewing the motion or in preparation for drafting and filing this reply." Instead, DIRECTV only seeks $1,343.00, representing the associate

time spent on the matter. As discussed above, this Court will consider whether this amount is warranted upon DIRECTV's timely submission of an affidavit of services comporting with Local Civ. R. 54.1. This Court will not entertain any request for fees or costs above $1,343.00.

## III. CONCLUSION

For the foregoing reasons, DIRECTV's motion to dismiss is granted. Further, the Court finds that DIRECTV is entitled to the reasonable attorneys' fees expended preparing this motion. DIRECTV is directed to submit an appropriate affidavit of services comporting with Local Civil Rule 54.1 within thirty (30) days of the entry of the Order accompanying this Memorandum Opinion. An appropriate form of Order is filed herewith.

D.N.J.,2005.
Directv, Inc. v. Marino
Not Reported in F.Supp.2d, 2005 WL 1367232 (D.N.J.)

END OF DOCUMENT

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Westlaw.

Not Reported in F.Supp.2d, 2003 WL 25713970 (D.N.J.)
**(Cite as: 2003 WL 25713970 (D.N.J.))**

**H**Only the Westlaw citation is currently available.NOT FOR PUBLICATION

United States District Court,
D. New Jersey.
Richard D. WEISS, Plaintiff,
v.
FIRST UNUM LIFE INSURANCE, Lucy E. Baird-Stoddard, J. Harold Chandler, George J. Didonna, M.D., Kelly M. Smith, and John and Jane Does 1-100, Defendants.
**Civ. No. 02-4249 (GEB).**

Aug. 27, 2003.

Avrom J. Gold, Mandelbaum Salsburg, West Orange, NJ, for Plaintiff.

Steven P. Del Mauro, McElroy, Deutsch, Mulvaney & Carpenter, LLP, Morristown, NJ, for Defendants.

**MEMORANDUM OPINION**

BROWN, District Judge.

**\*1** This matter comes before the Court upon defendants' motion to dismiss the First Amended Complaint pursuant to Fed.R.Civ.P. 12(b)(6) and 9(b). The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331. For the reasons discussed below, defendants' motion to dismiss is granted.

**I. BACKGROUND**

**A. PROCEDURAL HISTORY**

This matter arises from defendant First Unum Life Insurance's ("First Unum") termination of long term disability benefits to its insured, plaintiff Richard Weiss, on October 23, 2001. On July 24, 2002, plaintiff filed suit in New Jersey Superior Court in Somerset County alleging various state and common law causes of action arising from the denial of benefits. Thereafter, First Unum removed the matter to this Court alleging federal jurisdiction pursuant to the Employment Retirement Income Security Act of

1974 ("ERISA"), 29 U.S.C. § 1001, et. seq., and on September 19, 2002, defendants served notice of their intent to move to dismiss the initial Complaint on the grounds that plaintiff's state law causes of action were preempted by ERISA. In October 2002, defendants reinstated plaintiff's long term disability benefits retroactive to October 23, 2001, with interest. Thereafter, on November 26, 2002, nearly two months after the reinstatement of his benefits, plaintiff filed a First Amended Complaint adding various defendants and asserting for the first time claims under the Federal Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968, and the New Jersey state RICO statute, N.J. Stat. Ann. § 2C:41-1 to -6.2. On January 21, 2003, the Court granted defendants' motion to dismiss plaintiff's state law causes of action as preempted by ERISA. Defendants now move to dismiss the RICO claims stated in the First Amended Complaint.

**B. THE FIRST AMENDED COMPLAINT**

Plaintiff's factual allegations are taken as true in accordance with Fed.R.Civ.P. 12(b)(6) and may be summarized as follows.[FN1] Weiss was employed from July 1997 to August 2001, as an institutional equity and fixed income investment banker. First Amended Complaint ("Compl.") ¶ 10. Plaintiff was insured by First Unum through a group insurance policy with his employer. Id . ¶ 11. The policy provided for long-term disability benefits when the insured is "limited from performing the material and substantial duties of [his] regular occupation due to ... sickness or injury." Id. ¶ 12. Plaintiff also obtained supplemental long-term disability benefits from First Unum in addition to his standard benefits. Id. ¶ 13.

> FN1. In setting forth their statement of facts the defendants rely upon the affidavit of Karen Connolly and accompanying exhibits which they have submitted in support of the instant motion. Defendants refer to the Connolly affidavit and exhibits as the "administrative record" and maintain that they may be considered at this stage without converting the instant motion to one for summary judgment. Moreover, defendants maintain, without citation, that the affidavit and exhib-

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 25713970 (D.N.J.)
**(Cite as: 2003 WL 25713970 (D.N.J.))**

its must be considered because "[i]n order to fairly adjudicate the issue raised by this motion, the specific predicate acts alleged in the first amended complaint, as well as their documentary support, cannot be viewed in a vacuum." Defendants' Brief at 3 n. 3. To the extent that defendants have provided copies of letters or other documents specifically referenced and relied upon in the pleadings the Court may consider them without converting the instant motion into a motion for summary judgment. *Pryor v. National Collegiate Athletic Ass'n,* 288 F.3d 548, 560 (3d Cir.2002); *Poling v. K. Hovnanian Enterprises,* 99 F.Supp.2d 502, 507 (D.N.J.2000) (citing *Pension Benefit Guar. Corp. v. White Consol. Ind.,* 998 F.2d 1192, 1196 (3d Cir.1993), *cert. denied,* 510 U.S. 1042, 114 S.Ct. 687, 126 L.Ed.2d 655 (1994)). However, the Court will not consider the Connolly affidavit or any additional evidence submitted by the defendants. *See id.* Similarly, the Court will not consider the declaration of Linda Nee and the certification of Charles J. Marotta, M.D., submitted by plaintiff in response.

On January 2, 2001, plaintiff suffered "an acute anterior wall myocardial infarcation complicated by recurrent ventricular tachycardia and fibrillation requiring multiple defibrillations." *Id.* ¶ 14. On June 25, 2001, plaintiff was hospitalized due to ventricular tachycardia. *Id.* ¶ 15. Plaintiff continues to suffer from severe left ventricular dysfunction and extremely low blood pressure, resulting in frequent episodes of lightheadedness, fatigue, weakness and shortness of breath. *Id.* ¶¶ 16, 18, 19. In August 2001, plaintiff was terminated from his employment due to his medical condition. *Id.* ¶ 21.

**\*2** In May 2001, plaintiff filed a claim for long term disability benefits. *Id.* ¶ 23. In August 2001, First Unum began paying plaintiff monthly long term disability payments. *Id.* ¶ 24. On October 3, 2001, First Unum determined, allegedly without a medical examination or medical advice from plaintiff's physicians, that plaintiff was no longer permanently disabled and that plaintiff could return to work because his former employment required only a "sedentary exertion level." *Id.* ¶ 25. First Unum terminated plaintiff's long term benefits effective October 23,

2001. *Id.* Plaintiff appealed the termination on January 18 and April 23, 2002, and his appeals were denied by letters dated April 3 and May 2, 2002. *Id.* ¶ 27. As stated, defendants reinstated plaintiff's long term disability benefits in October 2002, retroactive to October 23, 2001, with interest. *Id.* ¶ 30.

Plaintiffs assert that the defendants engaged in a pattern of racketeering, which included acts of mail and wire fraud, to defraud holders and beneficiaries of long term disability policies of their benefits under the policies. More specifically, plaintiffs allege that defendants' employees are provided bonuses, promotions and other employment benefits for "denying sufficient long-term disability claims to meet management's goals of reducing corporate reserves set aside to meet those long term disability obligations." *Id.* ¶ 42(b). Defendants are alleged to have conspired to establish a policy of:

refusing to allow its in-house physicians to make independent medical assessments of whether claimants under long-term disability policies were genuinely disabled, ... pressuring those physicians to review numerous files in an inadequate amount of time to achieve medical certainty as to their judgments, ... coercing these physicians to rubber stamp denials of claims by claims personnel with little or no medical qualifications, ... denying or discouraging the use of independent medical evaluations and/or independent medical tests, and ... utilizing salary, bonuses and promotional opportunities to depend upon or be related to the physicians' statistics of denying claims with high reserves.

*Id.* ¶ 42(c). As part of this alleged scheme, defendants convene "roundtable" meetings for the purpose of denying the claims of otherwise eligible long term disability claimants. *Id.* ¶ 42(f). Defendants are alleged to have convened such a meeting on October 3, 2001, "at which time they conspired to and did in fact terminate plaintiff from long-term disability benefits to which he was otherwise entitled, in breach of their fiduciary obligations to him, and without regard to the competent medical evidence." *Id.* ¶ 42(g). The purpose of this scheme is "to reduce the reserve obligations of [Unum], boost shareholder confidence and improve stock yields to [defendants'] own pecuniary benefit and at the expense of the beneficiaries of the long-term disability policies." Compl. ¶ 42(e). Plain-

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 25713970 (D.N.J.)
**(Cite as: 2003 WL 25713970 (D.N.J.))**

tiff further maintains that defendants Lucy Baird-Stoddard and

**\*3** Kelly Smith furthered this scheme with numerous telephone calls and letters between June 2001 and June 2002. Compl. ¶ 43.

## II. DISCUSSION

### A. STANDARD UNDER FED.R.CIV.P. 12(B)(6)

A motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) may be granted only if, accepting all well pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief. *Oran v. Stafford,* 226 F.3d 275, 279 (3d Cir.2000); *Langford v. City of Atlantic* City, 235 F.3d 845, 850 (3d Cir.2000); *Bartholomew v. Fischl,* 782 F.2d 1148, 1152 (3d Cir.1986). The Court may not dismiss a complaint unless plaintiff can prove no set of facts that would entitle her to relief. *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Angelastro,* 764 F.2d at 944. "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

Under Rule 12(b)(6), the Court must "accept the allegations in the complaint as true, and draw all reasonable factual inferences in favor of the plaintiff. [The motion can be granted] only if no relief could be granted under any set of facts that could be proved." *Turbe v. Government of the Virgin Islands,* 938 F.2d 427, 428 (3d Cir.1991) (citing *Unger v. National Residents Matching Program,* 928 F.2d 1392, 1394-95 (3d Cir.1991)); *accord Langford,* 235 F.3d at 850; *Dykes v. Southeastern Pennsylvania Transp. Auth.,* 68 F.3d 1564, 1565, n. 1 (3d Cir.1995), *cert. denied,* 517 U.S. 1142, 116 S.Ct. 1434, 134 L.Ed.2d 556 (1996); *Piecknick v. Commonwealth of Pennsylvania,* 36 F.3d 1250, 1255 (3d Cir.1994); *Jordan v. Fox, Rothschild, O'Brien & Frankel,* 20 F.3d 1250, 1261 (3d Cir.1994). A complaint should not be dismissed unless it appears beyond doubt that "the facts alleged in the complaint, even if true, fail to support the claim." *Ransom v. Marrazzo,* 848 F.2d 398, 401 (3d Cir.1988). Legal conclusions made in the guise of factual allegations, however, are given no presumption of truthfulness. *Papasan v. Allain,* 478 U.S. 265,

286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986); *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir.1997) ("[A] court need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss.").

"In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court may consider only the complaint, exhibits attached to the complaint, matters of public record, and undisputedly authentic documents if the plaintiffs claims are based upon those documents." *Poling,* 99 F.Supp.2d at 507 (citing *Pension Benefit Guar. Corp.,* 998 F.2d at 1196); *accord Pryor,* 288 F.3d at 560.

Defendants move to dismiss the instant complaint on the grounds that plaintiff: (1) lacks standing assert a RICO claim pursuant to 18 U.S.C. § 1964(c), (2) failed to plead mail and wire fraud with particularity pursuant to Fed.R.Civ.P. 9(b), (3) has not sufficiently alleged two distinct entities as required to establish liability under 18 U.S.C. § 1962(c), and (4) has not plead a cognizable conspiracy claim.[FN2]

> FN2. Defendants also argue that plaintiff's state RICO claims are preempted by ERISA. This argument, however, was raised only in defendants' reply brief, and thus, plaintiff was not afforded an opportunity to respond. Accordingly, the Court will not consider this argument.

### B. STANDING TO ASSERT A CIVIL RICO CLAIM

**\*4** For a civil RICO plaintiff to have standing he must plead and ultimately prove an injury to his "business or property" proximately caused "by the conduct constituting the violation." [FN3] *Sedima, S.P.R.L. v. Imrex Co., Inc.,* 473 U.S. 479, 496 (1985); *accord* 18 U.S.C. § 1964(c); N.J. Stat. Ann. § 2C:41-4(c); *Holmes v. Sec. Investor Protection Corp.,* 503 U.S. 258, 267, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992); *Maio v. Aetna, Inc.,* 221 F.3d 472, 482-83 (3d Cir.2000). Mere "but for" causation is insufficient to confer RICO standing. *Holmes,* 503 U.S. at 267. Simply stated, " '[a] defendant who violates section 1962 is not liable for treble damages to everyone he might have injured by other conduct, nor is the defendant liable to those who have not been injured.' " *Sedima,* 473 U.S. at 496-97 (quoting *Haroco, Inc. v.*

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 25713970 (D.N.J.)
**(Cite as: 2003 WL 25713970 (D.N.J.))**

*American Nat'l. Bank & Trust Co.,* 747 F.2d 384, 398 (7th Cir.1984), *aff'd,* 473 U.S. 606, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985)). The requirement that plaintiffs be "injured in [their] business or property" has a "restrictive significance ... which helps to assure that RICO is not expanded to provide a federal cause of action and treble damages to every tort plaintiff." *Maio,* 221 F.3d at 483 (quoting *Steele v. Hospital Corp. of Am.,* 36 F.3d 69, 70 (9th Cir.1994)) (internal quotation marks and citations omitted). Although it is difficult to provide a precise definition of an injury to business or property, the Third Circuit has held that physical and emotional injuries are insufficient, *Genty v. Resolution Trust Corp.,* 937 F.2d 899, 918-19 (3d Cir.1991), and has "require[d] proof of a concrete financial loss...." *Maio,* 221 F.3d at 483 (quoting *Steele,* 36 F.3d at 70). Therefore, the question presented here is whether plaintiff has alleged in his Amended Complaint facts sufficient to demonstrate that plaintiff was injured in his business or property as a result of defendants' alleged fraudulent scheme.

> FN3. 18 U.S.C. § 1964(c) provides, in pertinent part, that "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the costs of the suit, including a reasonable attorney's fee." The New Jersey RICO statute provides, in pertinent part, "any person damaged in his business or property by reason of a violation of [N.J. Stat. Ann. § ] 2C:41-2 may sue therefor in any appropriate court and shall recover threefold any damages he sustains and the cost of the suit, including reasonable attorney's fee, costs of investigation and litigation."

Upon examination of the Amended Complaint and plaintiff's opposition, the Court concludes that plaintiff has failed to allege the type of concrete financial loss compensable as damage to business or property. As noted, plaintiff alleges that he was victimized by defendants' fraudulent scheme to deny holders and beneficiaries of long term disability policies of the benefits to which they are entitled under the policies. The Amended Complaint clearly states, however, that while defendants initially terminated plaintiff's claim

for long term benefits on October 23, 2001, they subsequently reinstated his benefits retroactive to October 23, 2001, with interest and attorney's fees. In light of these facts, plaintiff did not ultimately suffer the harm that the alleged fraudulent scheme is designed to inflict, *i.e.,* the denial of long term disability benefits. Instead, plaintiff had been made whole prior to his assertion of the various RICO claims in his Amended Complaint. Therefore, it appears that after being made whole in satisfaction of his state law causes of action preempted by ERISA, plaintiff sought a second bite at the apple by asserting RICO claims and raising the specter of treble damages.

**\*5** The RICO counts of the Amended Complaint (counts I-IV) fail to allege any facts indicating that plaintiff was harmed or injured due to defendants' alleged conduct aside from repeating the conclusory allegation that "plaintiff has suffered and will continue to suffer substantial injury to his property and person." Compl. ¶¶ 45, 48, 52, 55. First, the Court notes that any injury to plaintiff's person is not compensable under RICO. *Genty,* 937 F.2d at 918-19. Second, plaintiff has alleged no facts indicating in what respect his property was injured by the alleged scheme. *Camiolo v. State Farm Fire and Casualty Co.,* 334 F.3d 345, 365 n. 14 (3d Cir.2003).

In plaintiff's response brief he posits several claimed injuries to business or property which are not stated in the Amended Complaint. First, plaintiff maintains, without citation or explanation, that "[o]ne's financial security is clearly a property right." However, an injury to one's financial security, presumably by the temporary deprivation of funds later paid with interest, is not a "concrete financial loss" but rather the type of "intangible property interest" which the Third Circuit has found not to be compensable under RICO. *Maio,* 221 F.3d at 483 (collecting cases).

Next, plaintiff claims that as a result of being deprived of disability benefits for a year he "was forced to borrow funds to maintain himself and his children during that time, lost valuable medical benefits, deferred purchases and continues to be dependent upon First Unum's rigged system of claim administration." Plaintiff's Brief ("Pls.Br.") at 20. The Court is not persuaded that such allegations are sufficient to demonstrate an injury to business or property. Whether or not plaintiff had to borrow funds to support himself and his children, he was ultimately reimbursed those

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 25713970 (D.N.J.)
**(Cite as: 2003 WL 25713970 (D.N.J.))**

funds, with interest, by the defendant, and thus, did not suffer a financial loss as a result. Plaintiff's vague and conclusory assertion that he was damaged because he deferred purchases and lost medical benefits are wholly insufficient to establish a compensable injury to business or property. Plaintiff's claim that he will suffer damage from his continued dependence on First Unum's system of claim administration is also insufficient as it is clearly premised on alleged future damages which plaintiff has not yet suffered. *See Maio,* 221 F.3d at 495-96 (holding that to permit "RICO claims based on allegations of monetary loss proved solely by reference to ... coercive internal policies and practices which inevitably will affect the quality of care [plaintiffs] will receive in the future, ... would ... expand[ ] the concept of RICO injury beyond the boundaries of reason").

Lastly, plaintiff argues that this Court should ignore the fact that First Unum paid plaintiff's long term disability benefits prior to his asserting the instant RICO claims, stating that: "[i]f a criminal could moot out prosecution by returning the money after he has been caught and prior to arraignment, then sentencing and restitution could never be imposed." Pls. Br. at 20. Put another way, plaintiff appears to argue that defendant should not be permitted to continue to engage in and profit from their alleged fraudulent scheme because defendants ultimately reinstated plaintiff's long term disability benefits, and thus, plaintiff did not ultimately suffer injury to his business or property. In considering whether a plaintiff who had been indirectly injured had standing under RICO, the Supreme Court rejected a similar argument, stating that "the need to grapple with these problems is simply unjustified by the general interest in deterring injurious conduct since directly injured victims can generally be counted on to vindicate the law as private attorneys general, without any of the problems attendant upon suits by plaintiffs injured more remotely." *Holmes,* 503 U.S. at 269-70. Similarly, the interest in deterring defendants' alleged conduct does not provide a basis to proceed where the language of the complaint, taken as true, does not include sufficient allegations of an injury under the RICO statute given that the societal interest in preventing such conduct will be protected by other victims of the alleged scheme who have suffered a compensable injury under RICO.[FN4]

> FN4. The Court notes that it does not hold

that an alleged violator of RICO may at any time avoid liability under RICO for treble damages by paying single damages to the alleged victim. In the instant case, however, the Court places great weight on the fact that plaintiff only asserted his RICO claims after having been made whole for the claimed denial of benefits. Thus, the Amended Complaint, on its face, reveals that plaintiff suffered only a temporary deprivation of funds.

*6 Therefore, the Court concludes that the plaintiff has failed to allege an injury to his business or property sufficient to establish standing under the federal or New Jersey RICO statutes.[FN5]

> FN5. Because the federal and state RICO statutes are virtually identical with regard to standing, this analysis applies equally to federal and state RICO claims. *See Emcore Corp. v. PricewaterhouseCoopers,* LLP, 102 F.Supp.2d 237, 243 (D.N.J.2000) (citing *Callahan v. A.E. V., Inc.,* 182 F.3d 237, 260 (3d Cir.1999); *Interchange State Bank v. Veglia,* 286 N.J.Super. 164, 177-78, 668 A.2d 465 (App.Div.1995), *certif. denied,* 144 N.J. 377, 676 A.2d 1092 (1996)).

**C. PLEADING WITH PARTICULARITY PURSUANT TO FED.R.CIV.P. 9(B)**

Even assuming, *arguendo,* that plaintiff's allegations were sufficient to confer standing, dismissal of plaintiff s RICO claims is nevertheless appropriate under Fed.R.Civ.P. 12(b)(6) and 9(b). Plaintiff alleges violations of subsections (c) and (d) of the civil RICO statute against all defendants. Section 1962(c) provides that it is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering." Subsection (d) of 1962 prohibits "conspir[ing] to violate any of the provisions" of subsection (c). To plead a violation of subsection (c), and thus, survive defendants' Rule 12(b)(6) motion, plaintiff must sufficiently allege: "(1) the existence of an enterprise affecting interstate commerce; (2) that the defendant[s] w[ere] employed by or associated with the enterprise; (3) that the defendant[s] participated, either directly or indirectly, in

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 25713970 (D.N.J.)
**(Cite as: 2003 WL 25713970 (D.N.J.))**

the conduct or affairs of the enterprise; and (4) that the defendant[s] participated through a pattern of racketeering activity that included at least two racketeering acts." *Annulli v. Panikkar,* 200 F.3d 189, 199 (3d Cir.1999); *accord Sedima,* 473 U.S. at 496. Section 1961(1) provides an exhaustive list of predicate acts constituting racketeering activity.[FN6] *Sedima,* 473 U.S. at 496 n. 14; *Annulli,* 200 F.3d at 199; *Poling,* 99 F.Supp.2d at 508.

> FN6. The New Jersey RICO statute incorporates by reference the federal list of racketeering activities. N.J. Stat. Ann. § 2C:41-1(2).

Here, plaintiff alleges that defendants committed predicate acts of mail and wire fraud. To plead mail or wire fraud, plaintiff must allege: "1) the existence of a scheme to defraud, 2) the use of the mails or wires in furtherance of the fraudulent scheme, and 3) culpable participation by the defendants." *Emcore,* 102 F.Supp.2d at 245 (footnote omitted) (citing *U.S. v. Hannigan,* 27 F.3d 890, 892 (3d Cir.1994); *U.S. v. Pearlstein,* 576 F.2d 531, 534 (3d Cir.1978)). Allegations of mail and wire fraud are subject to the heightened pleading standards of Fed.R.Civ.P. 9(b).[FN7] Rule 9(b) of the Federal Rules of Civil Procedure requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed.R.Civ.P. 9(b).[FN8] The purpose of the heightened pleading requirement is to "give[ ] defendants notice of the claims against them, provide[ ] an increased measure of protection for their reputations, and reduce[ ] the number of frivolous suits brought solely to extract settlements." *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1418 (3d Cir.1997). Although the Third Circuit has warned that "focusing exclusively on [Rule 9(b)'s] particularity language is too narrow an approach and fails to take account of the general simplicity and flexibility contemplated by the rules[,]" Rule 9(b) nevertheless "requires plaintiffs to plead with particularity the 'circumstance' of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior." *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.,* 742 F.2d 786, 791 (3d Cir.1984) (quotations omitted), *cert. denied,* 469 U.S. 1211, 105 S.Ct. 1179, 84 L.Ed.2d 327 (1985). Plaintiffs may not rest upon vague or conclusory al-

legations of fraud. *In re Burlington Coat Factory,* 114 F.3d at 1418. Similarly, general allegations of fraud against multiple defendants "without informing each defendant as to the specific fraudulent acts he or she is alleged to have committed do not satisfy Rule 9(b)." *Poling,* 99 F.Supp.2d at 508 (citing *Mayor and Council of Borough of Rockaway v. Klockner & Klockner,* 811 F.Supp. 1039, 1060 (D.N.J.1993)). Rather, plaintiffs must "plead the specific conduct alleged to be fraudulent along with the 'date, place and time' that the alleged fraud occurred or use some 'alternative means of injecting precision and some measure of substantiation into their allegations of fraud.' " *Id.* (quoting *Seville,* 742 F.2d at 791).

> FN7. Rule 4:5-8(a) of the New Jersey Rules of Court employs a similar heightened pleading standard for state law fraud claims: "[i]n all allegations of misrepresentation, fraud, mistake, breach of trust, willful default or undue influence, particulars of the wrong, with dates and items if necessary, shall be stated insofar as practicable. Malice, intent, knowledge, and other condition of mind of a person may be alleged generally."

> FN8. Rule 9(b) further provides that "Malice, intent, knowledge, and other condition of mind of a person may be averred generally."

*7 Here, the plaintiff has failed to plead the circumstances of the alleged scheme to defraud with particularity. As noted, plaintiff alleges that the various defendants engaged in a scheme to defraud holders and beneficiaries of long term disability policies of their benefits under the policies. In describing the alleged fraudulent scheme plaintiff generally alleges, without differentiation, that the defendants: (1) offered bonuses and other employment benefits to employees based upon the number long term disability claims denied, (2) caused non-medical claims personnel to make medical determinations on long term disability claims, (3) pressured its in house physicians to "rubber stamp" denials of claims by non-medical claims personnel by causing physician's salary, bonuses and promotional opportunities to be based upon the number of claims denied, and (4) organized roundtable meetings for the purpose of denying claims of otherwise eligible long term disability claimants. Compl. ¶ 42. Plaintiff further asserts that defendants Baird-

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 25713970 (D.N.J.)
(Cite as: 2003 WL 25713970 (D.N.J.))

Stoddard and Smith contacted him various times by phone and letter between June 2001 and June 2002, with regard to his claim for benefits and subsequent appeals, and that these communications were made in furtherance of the scheme to defraud. *Id.* ¶ 43.

An examination of plaintiff s allegations regarding the alleged scheme to defraud reveals that plaintiff has failed to offer the "measure of substantiation" contemplated by the court in *Seville . 742 F.2d at 791.* As noted, plaintiff fails to differentiate between any of the defendants in describing their alleged fraudulent conduct. Instead, plaintiff merely refers to defendants, the corporation and individual defendants alike, as a single entity in describing their design and perpetuation of the fraud. Thus, plaintiff fails to allege which specific fraudulent acts the particular defendants are alleged to have engaged in. For example, according to plaintiff's allegations, defendant Chandler, the Chairman, President and CEO of Unum-Provident was equally involved in the alleged fraudulent conduct as defendant Baird-Stoddard, a customer care specialist. Moreover, plaintiff does not provide any detail regarding the dates when the alleged fraudulent acts occurred. The only allegations which are stated with any degree of particularity, taken as true, simply show the denial of plaintiff s claim for benefits and do not in any way indicate that the denial was the result of fraud. Lastly, plaintiff refers to various communications which allegedly constitute acts of mail and wire fraud but plaintiff fails to state with any specificity how these communications contributed to or furthered the alleged scheme. *See Warden v. McLelland, 288 F.3d 105, 114 (3d Cir.2002).*

Similarly, plaintiff has failed to allege with any specificity the alleged conspiracy to defraud plaintiff, stating only that "[d]efendants have conspired to violate 18 U.S.C. § 1962(c)" and that plaintiff has suffered injury as a result. Compl. ¶ 48; *accord* Compl. ¶ 55 (making identical allegation regarding State RICO conspiracy).

**\*8** Accordingly, defendants' motion is granted and plaintiff's RICO claims stated in counts one through four are dismissed.

**D. LEAVE TO AMEND**

The Federal Rules of Civil Procedure provide that a party may amend his pleading once before a responsive pleading is served, or thereafter upon leave of court or on consent from his adversary. Fed.R.Civ.P. 15(a). The rule states that "leave should be freely given when justice so provides." *Id.* The Third Circuit has adopted a particularly liberal approach to the amendment of pleadings to ensure that "a particular claim will be decided on the merits rather than on technicalities." *Dole Arco Chemical Co., 921 F.2d 484, 486-87 (3d Cir.1990)* (citing 6 C. Wright, A. Miller & M. Kane, Federal Practice and Procedure: Civil 2d § 1471 (West 1990)). Leave should be granted absent a showing of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, futility of amendment, etc." *Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); accord Oran, 226 F.3d at 291; Heyl & Patterson Int'l, Inc. v. F.D. Rich Housing of the Virgin Islands, Inc., 663 F.2d 419, 425 (3d Cir.1981), cert. denied sub nom., F .D. Rich Housing of the Virgin Islands v. Government of the Virgin Islands, 455 U.S. 1018, 102 S.Ct. 1714, 72 L.Ed.2d 136 (1982).* The Third Circuit has emphasized that "prejudice to the non-moving party is the touchstone for the denial of an amendment." *Bechtel v. Robinson, 886 F.2d 644, 652 (3d Cir.1989)* (citations omitted). "In the absence of substantial or undue prejudice, denial must be grounded in bad faith or dilatory motives, truly undue or unexplained delay, repeated failure to cure deficiency, or futility of amendment." *Heyl, 663 F.2d at 425* (citing *Foman, 371 U.S. at 182); accord Bechtel, 886 F.2d at 652-53; Gasoline Sales, Inc. v. Aero Oil Co., 39 F.3d 70, 74 (3d Cir.1994); Caldwell v. KFC Corp., 958 F.Supp. 962, 966 (D.N.J.1997); Oquendo v. Bettcher Indus., Inc., 939 F.Supp. 357, 360-61 (D.N.J.), aff'd, 118 F.3d 1577(3d Cir.1996).*

Plaintiffs have requested leave to file a Second Amended Complaint and limited discovery to aid in drafting the amendment. The request for discovery at this stage is an unusual one. Plaintiff has cited no case, and this Court's research has uncovered none, in which a plaintiff was permitted to engage in discovery to aid in the drafting of an Amended Complaint. Indeed, one of the purposes of Rule 12(b)(6) and Rule 9(b) is to determine if plaintiff has made sufficient allegations to require the defendant to endure the burden and expense of the discovery process. Accordingly, the Court will deny plaintiff's request

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 25713970 (D.N.J.)
**(Cite as: 2003 WL 25713970 (D.N.J.))**

for discovery.

Defendants contend that leave to amend should be denied because any attempt at amendment would be futile. Considering the basis for the instant dismissal, the Court cannot conclude at this stage that any amendment would necessarily be futile. While it is unlikely that plaintiff will be able to readily cure the noted standing deficiency in a manner consistent with Fed.R.Civ.P. 11, *see Maio,* 221 F.3d at 500 n. 19, the Court cannot fully consider the futility of any amendment without examining plaintiff's proposed Second Amended Complaint.

**\*9** Accordingly, the Court will permit plaintiff to file a motion for leave to file a Second Amended Complaint within twenty days of the date of this Order.[FN9]

> FN9. Such motion shall include plaintiff's proposed Second Amended Complaint.

## IV. CONCLUSION

For the reasons discussed above, defendants' motion to dismiss the Amended Complaint is granted. An appropriate form of order is filed herewith.

D.N.J.,2003.
Weiss v. First Unum Life Ins.
Not Reported in F.Supp.2d, 2003 WL 25713970 (D.N.J.)

END OF DOCUMENT

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.